**R. W. BENNETT et al.,**

v.

**James D. ELLIOTT et al.**

**No. 4697.**

United States District Court
M. D. Tennessee,
Nashville Division.

Dec. 13, 1968.

Frank Bryant, of Bryant, Price, Brandt & Torbett, Johnson City, Tenn., for plaintiffs.

Robert M. May, Jonesboro, Tenn., Edwin F. Hunt, of Boult, Hunt, Cummings & Conners, Nashville, Tenn., and Thomas E. Fox, Deputy Atty. Gen., State of Tennessee, Nashville, Tenn., for defendants.

Before PHILLIPS, Circuit Judge, MILLER, Chief Judge, and GRAY, District Judge.

## ORDER

By order entered July 1, 1968, the Court directed the Quarterly County Court of Washington County, Tennessee, to file with the Court, on or before November 15, 1968, a proposed plan for reapportioning the membership of that body in compliance with the principles set forth in the opinion of the Court in this action rendered on February 13, 1968. Hyden, et al., v. Baker, et al., (Bennett, et al., v. Elliott, et al.), D.C., 286 F.Supp. 475 (1968). By the same order, it was directed that within ten days after the filing of such plan, any party would have the right to file objections thereto.

A proposed plan was filed by the Quarterly County Court of Washington County on November 14, 1968. On November 18, 1968, plaintiffs filed two exceptions or objections to the proposed plan: first, that the proposed plan in providing eight justices of the peace to be elected at large from Washington County as a whole violates Art. 6, § 15

of the Constitution of Tennessee which provides, inter alia, that there shall be two justices of the peace elected in each district into which the county shall be divided, with no provision being made for the election of justices of the peace from counties at large; and second, that the proposed plan is incomplete and insufficient in that it fixes no date for the election of the justices of the peace provided for in the plan.

No objection is made to the proposed plan on the ground that it fails to comply with the "one man, one vote" principle, or upon the ground that it does not properly reapportion the membership of the Quarterly County Court of Washington County insofar as federal constitutional principles are concerned.

An examination of the proposed plan discloses that it divides the county into 14 quarterly or county districts with two members of the County Court to be elected from each district. Eight additional members of the County Court are provided to be elected at large from the entire county, making a total county court membership of 36. In creating quarterly or county districts, the existing civil districts and voting precincts are arranged or combined in such way that no change is made in existing civil district and voting precinct lines. The registered voters for each of the 14 quarterly or county districts varies from a high of 2,481, to a low of 1,676.

The total number of registered voters for the county, as set forth in the plan, is 29,015. The mean or average number of registered voters for each of the 14 quarterly or county districts is 2,072.5. Thus, the percentage variation of the district having the lowest number of registered voters (the 13th) is 19.131, while the district having the highest number of registered voters (the 9th) varies from the average by a percentage of 19.710.

Under the proposed plan the quarterly or county districts are equally divided between the existing 9th Civil District, comprising Johnson City and adjacent areas, urban and suburban in character, and the remaining civil districts of Washington County, comprising the county seat town of Jonesboro, and the remaining civil districts of the county which are primarily rural in character. As between these two general segments of Washington County, the registered voters are also divided on an approximately equal basis. The 9th Civil District, which, under the proposed plan, would comprise quarterly or county districts 8 through 14, has a total of 14,656 registered voters; whereas, the remaining civil districts of Washington County, which, under the proposed plan, would comprise quarterly or county districts 1 through 7, have a total of 14,359 registered voters, a difference of only 297.

The proposed plan for reapportioning the membership of the Quarterly County Court of Washington County, Tennessee, was approved by the said Court by resolution adopted on October 10, 1968. The Court is of the opinion that the plan is fair and reasonable for present purposes and under existing circumstances. Insofar as practicable, the said quarterly or county districts, as proposed, represent a substantially equal division on the basis of voter registration figures and it therefore substantially complies with the "one man, one vote" principle. While the plan allows for a variation from the ideal of approximately 20%, the Court is of the opinion that the plan should nevertheless be approved on the present record. The absence of any objection to the manner in which quarterly or county district lines are drawn, or upon the ground that it constitutes too wide a departure from a mathematical standard, is a significant indication that the plan was approved by the Quarterly County Court in good faith and without ulterior motive. The Court is justified in concluding from the record that one motive in drawing the district lines was to avoid the disruption which would attend the splitting of voting precincts. The fact that the two districts having the lowest and the highest deviations from the mean are both within the urban or suburban areas of

the county indicates the absence of any significant discrepancy as between rural and more highly populated portions of the county. Where such circumstances are present, it would appear that some greater latitude is permissible in drawing county district lines for purposes of county court representation than might otherwise be the case.

■ The objection that the plan violates a state constitutional provision in providing for members elected at large is without merit, since the ultimate measure of the plan's validity is the Fourteenth Amendment to the United States Constitution and not state law. Nor is the failure of the plan to provide a date for an election of any significance, as this Court determines by this order both the date for holding an election and the date when members elected under the plan shall assume their offices, the powers of the present county court remaining unimpaired in the meantime.

It is, therefore, ORDERED, ADJUDGED and DECREED by the Court that the proposed plan for reapportioning the membership of the Quarterly County Court of Washington County, Tennessee, be and it is hereby approved.

In order to implement the said plan, an election shall be held to fill the positions created thereby on the third Thursday in March, 1969. The persons elected to the positions shall take office on the first Monday in April, 1969, and shall hold office until September 1, 1972, or until their successors are elected and qualified. All candidates for said positions from the quarterly or county districts provided for under said plan shall qualify within the time and in the manner provided for by Tennessee law; and the election commissioners for Washington County, Tennessee, are directed to take all steps necessary to hold and conduct the said election and to implement the terms and provisions of this order.

Pending the election and qualification of the members in accordance with the plan of reapportionment approved by this order, the powers, duties, and responsibilities of the present Quarterly County Court of Washington County, Tennessee, and its members shall remain unaffected.

Nothing in this order should be construed as approval by the Court of any particular percentage deviation from the population mean in other cases involving county court reapportionment.

Jurisdiction of the action is retained to enter any further orders which may become necessary to enforce the terms and provisions of this order, and to implement the said plan of reapportionment.