Rev. William SEALS et al., Plaintiffs-Appellees, Cross-Appellants,

v.

The QUARTERLY COUNTY COURT OF MADISON COUNTY, TENNESSEE, et al., Defendants-Appellants, Cross-Appellees.

No. 77–1110.

United States Court of Appeals, Sixth Circuit.

Argued June 15, 1977.

Decided Sept. 14, 1977.

Hewitt P. Tomlin, Jr., Waldrop, Hall, Tomlin & Farmer, Jackson, Tenn., for defendants-appellants, cross-appellees.

G. Philip Arnold, Ratner, Sugarmon, Lucas, Salky & Henderson, Memphis, Tenn., Robert A. Murphy, William E. Caldwell, Washington, D. C., Nathaniel R. Jones, New York City, for plaintiffs-appellees, cross-appellants.

Before EDWARDS, PECK and ENGEL, Circuit Judges.

EDWARDS, Circuit Judge.

This is the third time this voting rights case has been before this court. (*See Seals v. Quarterly County Court*, 496 F.2d 76 (6th Cir. 1974), and 526 F.2d 216 (6th Cir. 1975)).

In our 1974 opinion, we described the original issues as follows:

This action was filed by a group of black citizens of Madison County, Tennessee, attacking a plan providing for election from the county at large of all members of the county's governing body,

known in Tennessee as the Quarterly County Court.

Approximately 30 per cent of the population of Madison County is black. Plaintiffs assert that the equal protection and voting rights of black citizens guaranteed by the Fourteenth and Fifteenth Amendments are violated because the county-wide plan minimizes and cancels out the voting strength of black citizens, denies them effective representation on the Quarterly County Court and discourages them from voting.

496 F.2d at 77.

In that opinion, we vacated the decision of the District Court denying relief and remanded the case for further consideration in light of intervening decisions of the Supreme Court. The District Court once again denied relief. In our 1975 opinion, we reserved decision on the federal constitutional issue and remanded the case for the District Court to allow plaintiffs' proposed amendment of their complaint to allege a pendent state law claim for the same relief under *Tennessee v. Washington County*, 514 S.W.2d 51 (Tenn.Ct.App. 1973), *aff'd mem.*, 514 S.W.2d 57 (Tenn. 1974).[1]

The District Judge has now heard the state law claim, and entered judgment favorable to the Plaintiffs. He has also approved an apportionment plan for The Quarterly County Court and ordered an election for August 2, 1977. In addition, however, the District Judge held that no attorney's fees would be allowed Plaintiffs, basing this denial primarily upon a holding that Plaintiffs' Federal Fourteenth Amendment rights were not violated by the multimember election district. Defendants appealed from the District Judge's grant of relief under Tennessee state law, and from his denial of a stay. Plaintiffs cross-appealed from the denial of attorney's fees and from his holding that the multimember election district did not violate the Federal Constitution.

After briefing and oral hearing of the Appeal and the Cross Appeal, this Court entered an Order affirming the District Court as to its judgment on the state law issue, and denying any stay of the proposed election under the new apportionment plan.

What remains to be decided in this matter are the two issues raised by the Cross Appeal, namely: 1) the holding that Plaintiffs did not prove any Fourteenth Amendment violation, and 2) the denial of Plaintiffs' claim for attorney's fees.

As to the Fourteenth Amendment issue, in our 1975 opinion, we specifically declined to pass upon the federal voting rights claim since a state law basis for relief of the same complaint appeared possible. We noted the difficulty of the federal constitutional issue and the long-stated preference in the federal courts for avoiding federal constitutional adjudication when valid state law grounds for decision are available. (*Siler v. Louisville & Nashville Railroad Co.*, 213 U.S. 175, 193, 29 S.Ct. 451, 53 L.Ed. 753 (1909); *Hagans v. Lavine*, 415 U.S. 528, 546, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974)).

◼ The state law claim upon which this litigation has now been terminated clearly involved "a common nucleus of operative fact" with Plaintiffs' federal constitutional claims, which we have previously described as "substantial". (*See United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). Hence, the state law claim was properly subject to the jurisdiction of the federal court. Under these circumstances, the District Judge's holding on the Fourteenth Amendment issue was unnecessary. Under *Hagans v. Lavine, supra*, it was also undesirable, and that portion of the District Judge's opinion and judgment is vacated.

The attorney's fee question posed by Plaintiffs' Cross-Appeal has also been erroneously decided, and that portion of the District Judge's opinion and judgment is vacated likewise.

---

1. This amendment had been proposed by Plaintiffs after the first remand of this case and had been denied by the District Judge.

In the wake of the Supreme Court's decision barring award of attorney's fees in a private attorney general type of claim (absent "extraordinary circumstances" or specific congressional authorization, *see Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)), Congress adopted two bills obviously designed to provide such a remedy.

1) Voting Rights Act of 1965 Extension Act § 402, 42 U.S.C.A. § 1973*l*(e) (Supp. Pamph.1977):

(e) In any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.[2]

2) The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C.A. § 1988 (Supp.1977), *amending* 42 U.S.C. § 1988 (1970):

.   .   . In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or in any civil action or proceeding, by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than than the United States, a reasonable attorney's fee as a part of the costs.[3]

■ The instant case was brought under Revised Statute § 1979 (codified at 42 U.S.C. § 1983) and alleged that the at-large election scheme diluted and abridged the voting rights of black citizens in violation of the Fourteenth and Fifteenth Amendments. Since Congress plainly intended both bills to apply to voting rights litigation which, like our instant case, had not become final at the time of adoption,[4] we believe that both acts obviously provided authority to the District Judge to award attorney's fees in voting rights cases. Like similar remedial measures, they should be liberally construed to achieve the public purposes involved in the congressional enactment. *See* H.R.Rep.No. 94–1558, 94th Cong.,.2d Sess. 9. *See also Newman v. Piggie Park*, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968), and *Bradley v. School Board of Richmond*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974).

■ There is, however, no clear indication in the legislative history of the Voting Rights Act of 1965 Extension Act of 1975 that Congress considered the question of a federal court awarding attorney's fees where a party which filed a voting rights case under § 1983 alleging violation of the Fourteenth Amendment to the Federal Constitution actually prevailed on a state claim based on the same operative facts. What is missing in this regard under the 1975 voting rights act is unmistakably available under the legislative history of The Civil Rights Attorney's Fees Award Act of 1976. In a footnote to the House Report on the bill, the Committee said:

In some instances, however, the claim with fees may involve a constitutional question which the courts are reluctant to resolve if the non-constitutional claim is dispositive. *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). In such cases, if the claim for which fees may be awarded meets the "substantiality" test, *see Hagans v. Lavine, supra; United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), attorney's fees may be allowed even

---

**2.** *See* H.R.Rep.No.94–196, 94th Cong., 1st Sess. (1975); S.Rep.No.94–295, *id., reprinted in* 1975 U.S.Code Cong. & Admin.News, p. 774.

**3.** H.R.Rep.No.94–1558, 94th Cong., 2d Sess. (1976); S.Rep.No.94–1101, *id., reprinted in* 1976 U.S.Code Cong. & Admin.News, p. 5908.

**4.** *See Bradley v. School Board of Richmond*, 416 U.S. 696 (1974). The legislative history of

the 1976 act is explicit on this issue. *See* H.R.Rep.No.94–1558, *supra*, at 4 n.6; 122 Cong.Rec. H12155 (daily ed. Oct. 1, 1976) (Reps. Beard & Anderson); *id.* at H12160 (Rep. Drinan); *id.* at H12166 (motion by Rep. Ashbrook defeated); *id.* at S17052 (Sept. 29, 1976) (Sen. Abourezk).

**394**

though the court declines to enter judgment for the plaintiff on that claim, so long as the plaintiff prevails on the non-fee claim arising out of a "common nucleus of operative fact." *United Mine Workers v. Gibbs, supra,* at 725, 86 S.Ct. 1130.

H.R.Rep.No.94–1558, 94th Cong., 2d Sess. 4 n.7 (1976).

It seems unlikely to us that this language in the legislative history was fully considered by the District Judge. His opinion makes no mention of this paragraph. Nonetheless, the language quoted above appears to us to be a clear-cut indication that Congress considered the exact problem with which we are now confronted and provided an express indication as to how the general language of the 1976 statute was intended to be applied. Under such a circumstance (relatively rare in this court's experience), we, of course, follow congressional intent.

We note, but do not agree with the arguments of Defendants on this issue. We have read the sentence preceding the material quoted above from the House Report footnote. It deals with an entirely different situation. In our instant case, fees could clearly have been awarded if Plaintiffs had prevailed on their federal constitutional claim. And, of course, for the reasons stated above, they can be awarded under present facts (i. e., the District's Court's granting of relief on the alternative state claim basis).

■ This action, of course, is a federal action, and does not cease to be such because relief is rendered under the *Hagans v. Lavine* doctrine on an alternative state law ground. Congress clearly has the power in such a circumstance to authorize attorney's fees as a matter of federal law, and it equally clearly has done so. There is no reason to look to state law under these circumstances.

Nor do we entertain any fears that purely state litigation will be filed in federal courts because of the holding in this case. Absent a substantial federal claim (clearly present here) and an alternative state law

claim based (as here) upon the same operative facts, the *Siler-Hagans* rule could not be evoked.

■ Defendants' argument that the Eleventh Amendment bars an award of attorney fees against the county has, of course, been disposed of by the Supreme Court in *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). *See Rainey v. Jackson State College,* 551 F.2d 672, 675 (5th Cir. 1977).

The judgment of the District Court ruling upon Plaintiffs' federal constitutional claim is vacated. The judgment of the District Court denying Plaintiffs' claim for attorney's fees is reversed, and the case is remanded for determination of appropriate attorney's fees in accordance with this opinion.