NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0095n.06

No. 19-1685

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

CRYSTAL MURPHY,                                    )
                                                   )
    Plaintiff-Appellee,                            )
                                                   )
v.                                                 )      ON APPEAL FROM THE
                                                   )      UNITED STATES DISTRICT
VAIVE WOOD PRODUCTS COMPANY,                       )      COURT FOR THE EASTERN
                                                   )      DISTRICT OF MICHIGAN
    Defendant-Appellant.                           )
                                                   )

**FILED**
Feb 10, 2020
DEBORAH S. HUNT, Clerk

Before: ROGERS, KETHLEDGE, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. Crystal Murphy sued her former employer, Vaive Wood Products Company (Vaive), for sexual harassment, securing a $6,700 judgment and $46,935 in attorney's fees. Vaive now appeals the award of attorney's fees, claiming that Murphy's misconduct in the litigation and low level of success bar her from receiving any award, and in the alternative that the award was excessive. Because the district court acted within its discretion in calculating the fee award and no special circumstances render the fee award unjust, we AFFIRM the award of the district court.

I.

A.

Murphy began working for Vaive in October 2015. After Vaive terminated her employment in August 2016, Murphy brought suit. She claimed that Vaive had tolerated a hostile

work environment of pervasive sexual harassment and had fired her in retaliation for reporting harassment in violation of Title VII of the Civil Rights Act of 1964.

Vaive moved for summary judgment. The district court granted the motion on the retaliation claim but permitted the harassment claim to proceed to trial. At trial, Murphy testified that the harassment she suffered led her to develop a general fear of men; made her unable to attend narcotics-anonymous meetings because they involve interacting with men; caused her relationship with her children to deteriorate; and frequently led her to stay in her room and cry all day. Murphy did not demand a fixed amount of damages in her complaint, nor did her counsel in any subsequent submission to the district court. In his closing statement at trial, Murphy's counsel emphasized the difficulty of calculating emotional damages before saying:

> But again, you have to come up with a figure to compensate. What—what are some of the things that—that you might do? Let's say you said 50 bucks a day. I'm pulling a figure out of, you know—a hundred—a hundred dollars a day. All right. Well, she was being subjected to—to this during her employment for about 180 days. That's $18,000. She's been suffering the effects of the harassment for essentially two years, say 730 days. That's $73,000. So you could add those things together and say, okay, this is the amount. Or you could say it's a thousand dollars a day or $500 a day or $50 a day. None of it's going to be very accurate, you know, you just—you can't do it, all right?

The jury returned a verdict of $10,000 in favor of Murphy to compensate her for her emotional distress. Vaive then submitted motions for judgment notwithstanding the verdict, for a new trial, and for an amended judgment of $1 in nominal damages. Vaive attached to its motions records of a previously undisclosed probate case involving Murphy's custody over her children. The records revealed that Murphy had lost custody of her children from November 2012 to

September 2017. But Murphy had testified at her deposition that she had never been involved in any other "civil court proceedings" besides a case arising from a car accident.[1]

The district court denied Vaive's first two motions but partially granted its motion to amend the judgment. The court ruled that it could consider the probate records as newly discovered evidence or, alternatively, to prevent manifest injustice. It further found that Murphy had engaged in "wrongdoing," because it was "highly improbable" that she had "forgot[ten] about a more than six-year long probate proceeding" in the "three and one-half months" between her probate hearing and deposition. The district court held that a reduction in Murphy's jury award was warranted because the probate records undermined her claim that her experience of harassment had strained her relationship with her children. It declined, however, to limit damages to a single dollar, because Murphy had testified to other ways in which her harassment caused her emotional distress. Accordingly, the court reduced her award to $6,700.

B.

Murphy then moved for reasonable attorney's fees under 42 U.S.C. § 2000e-5(k). She requested $67,255 for 218.6 hours of work by three attorneys and one paralegal. She also sought $1,835.25 in costs. Vaive opposed the motion, arguing that Murphy's concealment of the probate records foreclosed any fee award. In the alternative, Vaive argued that Murphy's low level of success, among other factors, warranted a substantial downward adjustment of the lodestar calculation.

---

[1] Vaive's counsel asked Murphy whether she had "been involved in any other civil court proceedings? Civil meaning like this where you're a plaintiff, or in that case where you were the plaintiff driver that was injured." She responded, "No." It is not clear that a probate case fits this definition of "civil court proceedings," but Murphy does not contest the district court's finding that her testimony was inaccurate.

The district court awarded Murphy $46,935 in attorney's fees and $1,835.25 in costs, for a total of $48,770.25. The court began with the lodestar calculation. It found that 204.1 of the 218.6 hours Murphy requested were reasonable and that the proposed hourly rates were reasonable as well for two of her three attorneys.[2] The court then adjusted the lodestar amount on the basis of the twelve factors laid out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). It found that five of these factors—(1) the novelty and difficulty of the questions involved, (2) preclusion from other employment, (3) whether the fee is fixed or contingent, (4) the amount involved and the results obtained, and (5) awards in similar cases—weighed in favor of a downward adjustment.

The district court made three downward adjustments. To reflect that Vaive won summary judgment on one of Murphy's two claims, the court reduced the hours worked on the summary judgment motion by 50%. The court reduced the hours worked on the post-judgment motions by 50% as well, because Vaive succeeded on one of its three motions and the motions were prompted in part by the misconduct of Murphy and her attorneys. Lastly, the district court made a 10% across-the-board reduction to reflect four of the five remaining factors. It did not make an adjustment to account for the contingency fee agreement. With these adjustments, the district court reached its final calculation of $46,935 in attorney's fees and $1,835.25 in costs. Vaive timely appealed.

## II.

Vaive appeals only the award of attorney's fees. It argues that Murphy is not entitled to any fees at all because her misconduct renders the award of fees unjust and because she won only

---

[2] The district court reduced the rate for one of the attorneys from $300 per hour to $250 per hour based on the attorney's relative inexperience.

nominal damages. Binding caselaw forecloses the first argument, and the facts foreclose the second.

A.

"In any action or proceeding under" Title VII, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . . as part of the costs." 42 U.S.C. § 2000e-5(k). The Supreme Court has directed that "a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (citation omitted). Vaive alleges that Murphy's failure to disclose the existence of her probate proceedings at her deposition was a dishonest act that should bar her from receiving attorney's fees as a matter of equity.[3] But under the law of our circuit, "a plaintiff's bad acts" are not "special circumstances" that render a fee award unjust. *Wikol ex rel. Wikol v. Birmingham Pub. Schs. Bd. of Educ.*, 360 F.3d 604, 611 (6th Cir. 2004) (citing *Price v. Pelka*, 690 F.2d 98, 101 (6th Cir. 1982)). Murphy's deposition testimony therefore does not bar her from receiving attorney's fees.

B.

"When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all." *Farrar v. Hobby*, 506 U.S. 103, 115 (1992) (citation omitted). Vaive argues that Murphy received only nominal damages and is therefore not entitled to attorney's fees. Vaive characterizes Murphy's damages as nominal because she received only $6,700, allegedly "*less than one percent*

---

[3] Vaive also accuses Murphy and her counsel of several other acts of misconduct. We will not consider these other allegations of misconduct, however, because Vaive did not rely on them before the district court. *See Swanigan v. FCA US LLC*, 938 F.3d 779, 786 (6th Cir. 2019) ("As a general rule in this Circuit, arguments raised for the first time on appeal are forfeited." (citation omitted)).

of the amount of damages sought." But nominal and compensatory damages differ in kind, not merely in degree; although Murphy's damages are small, they are still compensatory.

"Nominal damages are a trivial sum of money awarded to a litigant who has established a cause of action but has not established that he is entitled to compensatory damages." *Restatement 2d of Torts* § 907 (1979). Nominal damages symbolically "vindicate[] deprivations of certain 'absolute' rights" when there exists no "actual injury" to remedy. *Carey v. Piphus*, 435 U.S. 247, 266 (1978). When the purpose of damages is to provide restitution for the real-world harms the plaintiff has suffered, damages are "compensatory" or "actual," not nominal. *See Restatement 2d of Torts* § 903.

In its order on Vaive's post-trial motions, the district court concluded that Murphy was entitled to $6,700 of the jury's original $10,000 verdict because she had proven harm at trial— namely, "that she suffered emotional distress because she cried all day, could not interact with men, and had a strained relationship with her children." The court expressly refused, in fact, to reduce Murphy's award to nominal damages of one dollar. Because Murphy was awarded damages to compensate her for the harms caused by her harassment, she did not receive nominal damages. The district court therefore did not abuse its discretion in granting her at least some attorney's fees. *See Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 556 (6th Cir. 2008) (holding fee award was not an abuse of discretion because "[u]nlike the plaintiff in *Farrar*, Imwalle was able to prove an 'actual, compensable injury'" (citation omitted)).

III.

Vaive next argues that we should further reduce the fee award because the district court did not adequately consider Murphy's low level of success and the other *Johnson* factors.[4] Vaive does not challenge the lodestar calculation itself, only the extent to which it should be adjusted. Because Vaive cannot show that the district court's 10% fee reduction failed to account for the concerns that it identifies, we find no abuse of discretion.

A.

"Given the district court's firsthand knowledge of the litigation and surrounding circumstances and the fact that the determination is largely a fact-intensive analysis, we give the district court's [attorney's fee] ruling substantial deference." *Planned Parenthood Sw. Ohio Region v. Dewine*, 931 F.3d 530, 542 (6th Cir. 2019). Accordingly, we review the district court's fee award for abuse of discretion, *Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 575 (6th Cir. 2019), which means we affirm unless we have "a definite and firm conviction that the trial court committed a clear error of judgment," *Moon v. Unum Provident Corp.*, 461 F.3d 639, 642 (6th Cir. 2006) (per curiam) (quoting *Eagles, Ltd. v. Am. Eagle Found.*, 356 F.3d 724, 726 (6th Cir. 2004)).

"The most useful starting point for determining the amount of a reasonable fee is" the lodestar amount, "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. Calculating the lodestar amount "does not end the inquiry," however. *Id.* at 434. "There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results

---

[4] Vaive also contends that "entries from Plaintiff counsel's billing records suggest inaccuracies." Specifically, it insinuates that Murphy's counsel may have inflated the number of hours spent preparing her to testify. Vaive has forfeited any argument that inaccuracies in Murphy's billing records merit a reduction in the fee award, however, because it did not raise this argument below. *Swanigan*, 938 F.3d at 786.

obtained.'" *Id.* The twelve factors[5] identified by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.* "may be relevant in adjusting the lodestar amount," *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989), although "many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate," *Hensley*, 461 U.S. at 434 n.9.

The district court calculated the lodestar amount to be $58,780. It then reduced the number of hours spent on the motion for summary judgment and the post-trial motion to account for the points where Murphy did not prevail, leading to a figure of $52,150. The district court also found that five of the *Johnson* factors—(1) the novelty and difficulty of the questions involved, (2) preclusion from other employment, (3) whether the fee is fixed or contingent, (4) the amount involved and the results obtained, and (5) awards in similar cases—weighed in favor of a further downward adjustment. It reduced the $52,150 figure by another 10% on the basis of four of these factors, without any further mention of Murphy's contingency fee agreement. This resulted in a final award of $46,935.

B.

Vaive argues first and foremost that the fee award should be further reduced because Murphy achieved a low level of success. It alleges that Murphy sought $1,000 a day for the two

---

[5] Those factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment due to acceptance of the case by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship between the attorney and the client; and (12) awards in similar cases.

*Dewine*, 931 F.3d at 543 n.3 (citing *Johnson*, 482 F.2d at 717–19).

years she experienced the effects of sexual harassment, a total of $730,000. Vaive therefore concludes that she received "*less than one percent* of the amount of damages [she] sought."

The prevailing party's level of success is "'the most critical factor' in determining the reasonableness of a fee award." *Farrar*, 506 U.S. at 114 (quoting *Hensley*, 461 U.S. at 436). "Where recovery of private damages is the purpose of . . . civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." *Id.* (alteration in original) (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 585 (1986) (Powell, J., concurring)). Still, the Supreme Court "has not mandated that district courts apply a fee reduction in cases where a plaintiff achieves only partial success." *Dewine*, 931 F.3d at 543. The district court need only "*consider* the relationship between a plaintiff's success and their award and provide an explanation of its reasoning." *Id.*

Here, Vaive misstates Murphy's damage request. As the district court correctly found, she did not request a particular sum. In his closing argument, Murphy's counsel repeatedly emphasized the difficulty of measuring emotional damages with a precise dollar amount. He did suggest some figures the jury could use as its baseline, ranging from $50 to $1,000 a day, with, as the district court found, a particular focus on $100 a day. But after throwing out these figures, counsel ultimately told the jury that "[n]one of it's going to be very accurate."

In light of Murphy's lack of specificity, it was reasonable for the district court to conclude that, as a general matter, "the amount of money sought was not substantial." The record certainly does not compel Vaive's conclusion that Murphy sought the specific sum of $1,000 a day for her injuries. Accordingly, the district court acted within its discretion when it reduced the fee award only modestly to account for Murphy's lack of success. Murphy's results were certainly not exceptional, but we cannot say that the district court erred by rejecting the claim that she obtained

only a miniscule fraction of the relief she sought. The district court could reasonably conclude that she received little in part because she sought little.

C.

Vaive also raises a series of claims based on the remaining *Johnson* factors. None has merit. Vaive argues that the case was not novel or complex and that no specialized skills were needed to present Murphy's case. But the lodestar calculation subsumes both of these factors. "The novelty and complexity of the issues presumably [are] fully reflected in the number of billable hours recorded by counsel," and "the special skill and experience of counsel should be reflected in the reasonableness of the hourly rates." *Blum v. Stenson*, 465 U.S. 886, 898 (1984). To the extent the district court abused its discretion when it determined that the lack of novelty and complexity in the case warranted a reduction, it erred to Vaive's benefit.

Vaive next maintains that the case did not preclude Murphy's counsel from obtaining additional employment, but the district court already included this factor as one of the reasons for its 10% reduction. Vaive makes no argument that this factor necessitates a greater reduction than the one the district court already made.

Vaive argues that a further reduction is warranted because the district court "relied heavily" on cases where the plaintiffs obtained much larger judgments when calculating the fee award. This claim, however, misreads the district court's opinion. The district court did not justify the award on the basis that this case was like the others it identified; it concluded a reduction was warranted because the cases were disanalogous. Vaive again makes no argument that the district court's reduction for this factor was insufficient.

Vaive seeks a further reduction on the basis of the contingency fee agreement between Murphy and her counsel. The district court concluded that this agreement warranted a reduction,

but it never actually made an adjustment on the basis of this factor. Ordinarily, we would remand such a case for the district court to clarify or reconsider its award. But in this case, any error was harmless, because this court has held that a contingency fee agreement may not be "the basis for a *downward* adjustment from an otherwise reasonable rate." *Hamlin v. Charter Township of Flint*, 165 F.3d 426, 438 (6th Cir. 1999).

Lastly, Vaive contends that the fee award should be further reduced because Murphy never argued that her case imposed time limitations on her counsel or was "undesirable." Vaive misunderstands the relationship between the lodestar calculation and the *Johnson* factors. It is not the case that the non-prevailing party is entitled to a fee reduction unless the prevailing party affirmatively demonstrates that the *Johnson* factors favor her. To the contrary, the lodestar amount is the "initial point of departure, when calculating a 'reasonable' attorney fee." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000). The district court "*may* then, within limits, adjust the 'lodestar' to reflect relevant considerations peculiar to the subject litigation." *Id.* (emphasis added). Vaive does not quarrel with the district court's calculation of the lodestar amount; neither does it make an affirmative case for a further reduction based on either of these *Johnson* factors. Vaive is therefore entitled to no further reduction on these grounds.

\* \* \*

For the foregoing reasons, we AFFIRM the district court's award of attorney's fees.